## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JOSHUA WHITE,           )
                          )
     Plaintiff,          )
                          )
v.                    )     Case Number: 4:16-cv-00248-JHE
                          )
COMMISSIONER OF SOCIAL    )
SECURITY ADMINISTRATION,   )
                          )
     Defendant.        )

## MEMORANDUM OPINION[1]

Plaintiff Joshua White ("White") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). White timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

White filed his application for a period of disability and DIB on September 21, 2012, alleging he became unable to work beginning August 15, 2011. (Tr. 31). The Agency initially denied White's application, and White requested a hearing where he appeared February 3, 2014. (Tr. 31, 49-70). After the hearing, the Administrative Law Judge ("ALJ") denied White's claim

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 8).

on June 19, 2014. (Tr. 31-44). White sought review by the Appeals Council, which it denied on December 15, 2015. (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On February 12, 2016, White initiated this action. (*See* doc. 1).

White, born in 1986, was twenty-five years old on the alleged onset date. (Tr. 43). He has a high school education, with some college. (*Id.*). White has past relevant work experience as a fast food cook, cable installer, and systems operator. (*Id.*). White complains of back pain and headaches, largely the result of an on-the-job injury that occurred in August 2011, testifying that he has to alternate between sitting and standing because of pain and constantly change positions when he sits. (Tr. 56).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found White met the insured status requirements of the Social Security Act through December 31, 2016 (his date last insured or "DLI"), and that White had not engaged in substantial gainful activity from his alleged onset date of August 15, 2011. (Tr. 33). At Step Two, the ALJ found White has the following severe impairments: degenerative disc disease status post lumbar fusion, depression, and obesity. (Tr. 33-37). At Step Three, the ALJ found White did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 37-39).

Before proceeding to Step Four, the ALJ determined White's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that White had the RFC to perform sedentary work as

4

defined in 20 C.F.R. 404.1567(a), except White can work with no climbing of ropes, ladders, of scaffolds; no work at unprotected heights or with hazardous machinery; no more than occasional stooping, crouching, or crawling; and no more than frequent interaction with co-workers, supervisors, or the general public. (Tr. 39-43).

At Step Four, the ALJ determined White is unable to perform any past relevant work. (Tr. 43). At Step Five, the ALJ determined, based on White's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy White could perform. (Tr. 43-44). Therefore, the ALJ determined White has not been under a disability and denied White's claim. (Tr. 44).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the determination White failed to demonstrate a disability, and the ALJ, as well as the Appeals Council, applied the proper standards to reach this conclusion. White challenges the Commissioner's decision on two specific grounds, contending: (1) the Appeals Council erred by failing to consider/remand based on new medical records it received and the decision was not based on substantial evidence when these submissions are considered (doc. 12 at 23-29 & doc. 16 at 1-7); and (2) the ALJ erred in substituting his opinion

for that of Dr. Jay Ripka, an consultative examining physician, without good cause (Doc. 12 29-32 & doc. 16 at 8-9).[4]  Neither of these grounds supports reversal.

## A.  Medical Records Submitted to the Appeals Council Do Not Warrant Remand

White argues new evidence that was submitted to the Appeals Council warrants remand of this case.  (*See* doc. 12 at 23).  "'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). The Appeals Council must review evidence that is new, material, and chronologically relevant. *Ingram,* 496 F.3d at 1261. The court reviews *de novo* whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

---

[4] On October 5, 2016, after briefing in this case was complete, White filed a "Motion to Remand Pursuant to Social Security Ruling 16-3p," arguing for remand so the ALJ can reevaluate the intensity and persistence of White's symptoms. (Doc. 17). Upon review of the motion and relevant Social Security Rulings, White fails to present any new evidence or identify any manifest error of law or fact that would justify or require remand of his case for additional consideration based on SSR. 16-3p.  The Commissioner published SSR 16-3p on March 24, 2016, and explicitly established the effective date for the ruling as March 28, 2016. *See* SSR. 16-3p, 2016 WL 1237954 (March 24, 2016). The Commissioner explained the ruling replaced prior SSR 96-7p, to eliminate the use of the term "credibility" and to "clarify that subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029 at *1. White has pointed to no authority that persuades the undersigned that this clarification requires remand. Because the effective date of SSR 16-3p came after the ALJ's decision, the court reviews the case under SSR 96-7p. However, even if the ruling was retroactively applied, an evaluation of the ALJ's decision with the clarification in mind does not require remand. The ALJ did not make any statements to indicate he assessed the credibility of White's character, but rather assessed the statements he made in light of the objective medical evidence. As such, the motion, (doc. 17), is **DENIED**.

Evidence is "new" if it is not redundant of evidence already present in the record. To be material, the evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if it relates to the period on or before the ALJ's decision. 20 C.F.R. 404.970(b). A medical evaluation conducted after the ALJ's decision may be chronologically relevant in certain circumstances if it pertains to conditions that pre-existed the ALJ's opinion. *Washington*, 806 F.3d at 1322-23 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)). In *Washington*, a consultative examiner provided an opinion regarding a claimant's mental condition. The opinion post-dated the ALJ's decision; however, the court found the opinion was chronologically relevant because the examiner indicated in his report that he based his opinion on the claimant's reports that "he had experienced hallucinations throughout this life" and on the state of the claimant's cognitive abilities before the ALJ issued a decision. *Id.* at 1322. In addition, the consultative examiner reviewed the claimant's "mental health treatment records from the period before the ALJ's decision reflecting that [the claimant] repeatedly reported experiencing auditory and visual hallucinations." *Id.*

### 1. Medical Records from Dr. Sovic and Brookwood Medical Center

Relying on *Washington*, White argues the Appeals Council erred when it did not consider medical records from Dr. Marion Sovic and Brookwood Medical Center solely because they were dated after the ALJ's decision. (Doc. 12 at 23 & doc. 16 at 1). In finding the records not chronologically relevant, the Appeals Council stated:

> We also looked at the Medical Records from Marion Slovic, M.D. dated from December 2, 2014 to January 27, 2015 (15 pages) and the Medical Records from Brookwood Medical Center dated September 4, 2014 (4 pages). The Administrative Law Judge decided your case through June 19, 2014. This new information is about a later time.

(Tr. 2). The Appeals Council did more than state the subject records were dated after June 19, 2014, but instead looked at the records and explained the "new information is about a later time." (*Id.*). Based on this language, it appears the Appeals Council considered the substance of the record and concluded they were about a later time after the period considered by the ALJ. Additionally, White has not explained how these records are chronologically relevant. White points to nothing within these records to show that they are about his condition as it existed before the ALJ's decision. Having reviewed these records, the undersigned agrees with the Appeals Council. There are treatment notes from Dr. Sovic, a pain management doctor, White saw *after* the ALJ's decision and records from a September 4, 2013 admission at Brookwood Medical Center because of back pain experienced a day after receiving an injection. (Tr. 8-27). Remand on this basis is not warranted because it does not appear the Appeals Council relied solely on the date on these records in determining that they were not chronologically relevant, and White has pointed to no evidence the records relate back to the period under consideration by the ALJ.

### 2. Medical Records from Dr. Bowen and Imaging from Gadsden Regional Medical Center

The Appeals Council did consider newly submitted medical records from Dr. Bowen at Birmingham Neurosurgery & Spine Group, PC, dated April 1, 2014 to June 16, 2014, and imaging from Gadsden Regional Medical Center, dated May 2, 2014. (Tr. 2, 5). However, after reviewing the evidence, the Appeals Council found this evidence did not provide a basis for changing the ALJ's decision. (Tr. 2). When the Appeals Council considers the proffered additional evidence and then denies review, it is not required to provide a detailed rationale for denying review. *Washington*, 806 F.3d at 1321 n.5 (citing *Mitchell v. Comm'r, Soc., Sec. Admin.*, 771 F.3d 780, 784 (11th Cir.2014)).

When a plaintiff submits additional evidence to the Appeals Council and argues to the court

that the Appeals Council erred in denying review, a district court must determine whether the Commissioner's decision is supported by substantial evidence as a whole. *Ingram v. Commissioner of Social Security*, 496 F.3d 1253,1262, 1266 (11th Cir. 2007). Here, the ALJ's decision was based on substantial evidence, and the new evidence submitted to the Appeals Council did not change that.

The records from Dr. Bowen indicate he treated White on April 2, 2014, May 5, 2014, May 9, 2014, and June 16, 2014. (R. 376-94). Dr. Bowen diagnosed White with "failed back syndrome" with bilateral radicular pain radiating into lower extremities. (Tr. 376-84). When White saw Dr. Bowen in April 2014, he reported lower back pain and rare pain in the right leg, denied any numbness or tingling in either leg at the time, and complained of bilateral tension headaches. (Tr. 376). As to his range of motion, Dr. Bowen indicated forward flexion of sixty degrees, hyper-extension of thirty degrees, and right/left lateral bend of twenty degrees. (Tr. 379). Dr. Bowen noted a normal gait and posture, as well as normal strength in White's lower extremities. (Tr. 379-80). Dr. Bowen ordered an MRI of White's lumbar spine. (Tr. 380).

An MRI was conducted at Gadsden Regional Medical Center on May 2, 2014. (Tr. 389). The MRI revealed "some scar on the left." (Tr. 389). After reviewing the MRI, Dr. Bowen included patient instructions "please tell him the films look normal postop. We can set up referral . . . for [dorsal column stimulator] trial." (*Id.*).

Although Dr. Bowen's general diagnosis of "failed back syndrome" and proposal that White try a dorsal column stimulator to treat his back pain differ from the specific diagnosis and treatment provided by Dr. Wilson, nothing in this new evidence leads to the conclusion that the Commissioner's decision was not based on substantial evidence or that White's limitations were more severe than assessed by the ALJ. To the contrary, radiology reports the ALJ considered

demonstrated "no significant structural abnormality *just expected postoperative changes* with fusion at L5-S1," (tr. 253), and are consistent with the MRI Dr. Bowen ordered and reviewed.

Nothing in the new evidence considered by the Appeals Council undermines the substantial evidence which supported the ALJ's decision. Therefore, considering the record as a whole, the Commissioner's decision is supported by substantial evidence.

## B. The ALJ Properly Evaluated Dr. Ripka's Opinion

White contends the ALJ failed to properly evaluate the opinion evidence provided by consultative physician Dr. Ripka. (Doc. 12 at 29-32 & doc. 16 at 8-9). When determining the weight to give to a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 404.1527(c). A treating physician's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)92). An opinion from a non-treating physician is not entitled to any special deference or consideration. *See* 20 C.F.R. §§404.1502, 404.1527(2)(c). An ALJ may discount a physician's opinion, including a treating physician's opinion, when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. § 404.1527(c).

Additionally, opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20

10

C.F.R. § 404.1527(d); *see* SSR96-5p, 1996 WL 374183 (1996). Thus, although physicians' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); SSR 96-5p. Here, the ALJ considered the various medical opinions in the record, and he stated good cause and reasons for the weight he assigned to each. (Tr. 36-37, 42).

In his decision, the ALJ noted Dr. Ripka evaluated White on January 22, 2014. (Tr. 36, 369-71). The ALJ observed that Dr. Ripka noted White was injured at work and diagnosed him with a herniated nucleus pulpous. (Tr. 36, 369). The ALJ observed that White was noted to have had a hemilaminectomy and microdiscectomy at L5-S1 on October 5, 2011, and a posterior fusion with an interbody spacer on February 16, 2012. (*Id.*). White claimed to have had no relief from pain after either surgery, and he was described as having had epidural injections that would provide some relief, but only lasting for four days. (Tr. 36-37, 369). The ALJ noted White also alleged migraine headaches, which he did not have before the surgeries, and excessive worries and anxiety. (Tr. 37, 370).

The ALJ found that upon examination, Dr. Ripka reported White's head and neck were unremarkable. (Tr. 37, 370). The ALJ noted that Dr. Ripka found White had no limitations with his upper extremities, he was noted as able to bend laterally ten degrees right and left without pain, and his rotation was described as very painful. (*Id.*). The ALJ noted Dr. Ripka described White's forward flexion as limited to fifteen degrees, and he stated that White had 3/5 reflexes in the lower extremities, the patella, and in the Achilles. (*Id.*). White's sensation in his lower extremities was grossly intact. (*Id.*).

The ALJ noted Dr. Ripka completed a physical capacities evaluation. (Tr. 37, 375). Dr. Ripka opined that White could only sit for fifteen minutes at one time, stand for fifteen minutes at one time, and walk for fifteen minutes at one time; would be expected to lie down, sleep, or sit with legs propped at waist level or above for zero minutes; he could perform a task for less than fifteen minutes; and he could maintain attention and concentration for less than fifteen minutes. (*Id.*).

After reviewing the record evidence, the ALJ found Dr. Ripka's findings regarding White's limitations were entitled to little weight. (Tr. 42, 369-71, 375). The ALJ noted Dr. Ripka's opinion was not consistent with the objective medical evidence, including MRI results indicating White's status as post-fusion with normal alignment and intact hardware. (Tr. 42, 252). Additionally, the ALJ noted that Dr. Ripka's opinion was inconsistent with other medical evidence, which showed White had 5+ or intact strength and on some occasions a steady gait. (Tr. 42, 253, 255-61, 285, 331, 333). "Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(d)(2).

Additionally, the ALJ noted that Dr. Ripka's opinion was inconsistent with the findings of Dr. Wilson, who recognized a 14% (total body) impairment calculation. (Tr. 42, 253). Dr. Wilson observed that White continued to complain of pain, but he noted that postoperative plain films and MRI scans revealed no significant structural abnormality, just expected post-operative changes with a fusion at L5-S1. (Tr. 253). Dr. Wilson observed that the functional capacity evaluation demonstrated White checked out in the medium category, but it was noted White only gave a fair effort according to the examiner. (*Id.*). Dr. Wilson released White to return to work with restrictions, refilling his pain medication, with White to return as needed. (*Id.*). The ALJ found Dr. Wilson had a long-standing relationship with White, while Dr. Ripka's opinion appeared to be

based on a single examination. (Tr. 42, 369-71).

As the fact-finder, the ALJ has the duty to weigh the evidence of record, including the task to examine the evidence and resolve conflicting reports. *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 2006). Here, the ALJ found the objective medical evidence and Dr. Wilson's observations as White's treating physician were entitled to more weight than the opinion of Dr. Ripka. (Tr. 42). For the reasons articulated above, this decision is supported by substantial evidence.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying White's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 25th day of September, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE